**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PAULINE DALE STONEHILL,     :
                                      :
       Plaintiff,               :       Civil Action No.:     19-3770 (RC)
                                        :
       v.                     :       Re Document No.:    51, 54, 60
                                        :
U.S. DEPARTMENT OF JUSTICE    :
TAX DIVISION,               :
                                        :
       Defendant.           :

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR PRODUCTION SCHEDULE; DENYING DEFENDANT'S
CROSS-MOTION TO DISMISS; HOLDING IN ABEYANCE PLAINTIFF'S MOTION FOR LEAVE TO
FILE SECOND AMENDED COMPLAINT**

**I. INTRODUCTION**

This Freedom of Information Act ("FOIA") action represents the most recent chapter in

decades of related FOIA litigation arising out of civil and criminal tax cases brought against

Henry Stonehill that resulted in a $17.6 million tax judgment against him in 1980. *See* 1d Am.

Compl. ¶ 15, ECF No. 8; Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶ 1,

ECF No. 16-2. Starting in 1979, Mr. Stonehill filed numerous FOIA requests seeking records

related to the investigation that resulted in that judgment, and his wife, Pauline Stonehill, picked

up the torch on his behalf as co-executor of his estate after he passed in 2002. *See* 1d Am.

Compl. ¶¶ 1–9, 85–86; Def.'s SUMF ¶ 2. Mrs. Stonehill initiated this action against the Tax

Division of the U.S. Department of Justice (the "Tax Division") in December 2019, *see* Compl.,

ECF No. 1, to enforce three FOIA requests originally filed in September 2018 through her

counsel, Robert E. Heggestad. *See* 1d Am. Comp. ¶ 126; Pl.'s Mot. Leave File 1d Am. Compl.,

Exs. 9(a), 10, 11, ECF No. 7-3. In February 2022, the Court partially granted the parties' cross-

motions for summary judgment and ruled on related motions.  *See Stonehill v. U.S. Dep't of Just. Tax Div.*, No. 19-cv-3770, 2022 WL 407145 (D.D.C. Feb. 10, 2022).  Presently before the Court are Mrs. Stonehill's motion for a production schedule, *see* Pl.'s Mot. Produc. Sched., ECF No. 51, the Tax Division's cross-motion to dismiss for lack of jurisdiction, *see* Def.'s Opp'n and Cross-Mot. Dismiss, ECF No. 54, and Mrs. Stonehill's motion for leave to file a second amended complaint, *see* Pl.'s Mot. Leave File 2d Am. Compl., ECF No. 60.[1]  For the reasons set forth below, the Court denies Mrs. Stonehill's motion for a production schedule, denies the Tax Division's cross-motion to dismiss, and holds in abeyance Mrs. Stonehill's motion for leave to file a second amended complaint.

## II.  BACKGROUND

The Court presumes familiarity with the detailed factual and procedural background of this case from its prior opinion.  *See Stonehill*, 2022 WL 407145, at *1–4.  That opinion considered the adequacy of the Tax Division's search and justifications for any withholdings with respect to the three FOIA requests at issue in this case, which the Tax Division assigned Request Nos. 11238, 11239, and 11240.  *See id.* at *4–24; Def.'s SUMF ¶ 13.  As to Request No. 11238, a two-part request, the Court ordered the Tax Division to search for and either release or justify any withholdings to responsive records.  *See Id.* at *10–11.  Regarding request No. 11239, the Court granted summary judgment to the Tax Division as to the adequacy of the search, but ordered the Tax Division to submit a *Vaughn* index further justifying withholdings as to certain categories of records.  *Id.* at *13, 24.  Regarding request No. 11240, the Court ordered the Tax

---

[1] Mrs. Stonehill filed a corrected version of the motion for leave to file a second amended complaint, which appears at ECF No. 61-1.  The Court herein refers to this corrected document.

Division to conduct a search consistent with its opinion and either release responsive records or justify any withholdings.  *Id.* at *8.

After that opinion issued in February 2022, the parties agreed on a schedule to govern the Tax Division's search, review, and release of records responsive to Request Nos. 11238 and 11240.  *See* Joint Status Report, Feb. 24, 2022 at 4–5, ECF No. 45.  Early progress was halting, owing at least in part to the large volume of potentially responsive documents identified and delays related to "technology relatively new to the Tax Division" used to locate responsive "documents or portions of documents with handwriting that keyword searches may not identify as readable."  Joint Status Report, June 3, 2022 ¶ 12, ECF No. 48.  The Court therefore ordered the Tax Division to "provide an update to plaintiff's counsel on July 1, 2022 regarding the status of its search, including an exact date by when the Tax Division will release its first batch of records and make its subsequent monthly rolling releases of records."  Min. Order, June 3, 2022. It further ordered the Tax Division to "provide plaintiff's counsel a status update on the first working day of every month thereafter related to the status of its search."  *Id.*

The parties' next joint status report explained that the Tax Division was "currently processing for review and release Part 1 and Part 2 of FOIA Request No. 11238, and FOIA Request No. 11240 from a cache of approximately 508,303 pages of potentially responsive records."  Joint Status Report, Aug. 26, 2022 ¶ 1, ECF No. 49.  It indicated that, while the Tax Division "committed to releasing its first batch . . . of any non-exempt records on August 22, 2022," after review of "hundreds of records," it did not identify "any non-exempt records to release."  *Id.* ¶¶ 5, 7.  The joint status report stated that the Tax Division would "provid[e] regular monthly releases on the first working date of each month beginning in October," but

provided "notice[] [to] the Court that [Plaintiff] intends to file a motion seeking the Court to order the Tax Division to expedite its processing of the requests."  *Id.* ¶¶ 5, 10.

Following through on that plan, a few weeks later Mrs. Stonehill moved for a production schedule requiring the Tax Division to "identify and produce non-exempt documents responsive to FOIA requests # 11238 and 11240 within 120 days from the date of the Court's Order."  Pl.'s Mot. Produc. Sched. at 1.  The Tax Division responded with a joint opposition brief and cross-motion to dismiss for lack of jurisdiction.  *See* Mem. Supp. Def.'s Opp'n and Cross-Mot. Dismiss ("Def.'s Mot."), ECF No. 54-1.  Responding to the alleged jurisdictional defect raised in the Tax Division's motion, Plaintiff later moved for leave to file a second amended complaint.  *See* Pl.'s Mot. Leave File 2d Am. Compl.  The motions are ripe for consideration.

## III.  ANALYSIS

### A.  Defendant's Cross-Motion to Dismiss

#### 1.  Legal Standard

"When ruling on a Rule 12(b)(1) motion, the court must 'treat the complaint's factual allegations as true' and afford the plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (citation omitted).  Under Fed. R. Civ. P. 12(b)(1), a party may move to dismiss a claim for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Courts must address jurisdiction as a "threshold matter."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also McBride v. Mnuchin*, No. 19-cv-60, 2019 WL 3323412, at *2 (D.D.C. July 24, 2019) ("Before addressing the merits of a case, a court must confirm that it has subject matter jurisdiction." (internal citation omitted)).  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and therefore is "a necessary 'predicate

to any exercise of [Article III courts'] jurisdiction.'" *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.D.C. 2012) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)).  Accordingly, "[e]very plaintiff in federal court bears the burden of establishing the three elements that make up the irreducible constitutional minimum of Article III standing: injury-in-fact, causation, and redressability." *Id.* at 1362 (internal citation omitted). Fundamentally, the standing inquiry seeks to determine whether there exists a sufficient "nexus between the status asserted by the litigant and the claim he presents . . . to assure that he is a proper and appropriate party to invoke federal judicial power." *Flast v. Cohen*, 392 U.S. 83, 102 (1968).

### 2.  Analysis

The Tax Division asserts that Mrs. Stonehill's counsel, Robert Heggestad, made the three FOIA requests at issue here, and therefore that Mrs. Stonehill herself "lacks standing because she was not the FOIA requester at the administrative level." Def.'s Mot. at 9.

 In the FOIA context, "anyone whose request for specific information has been denied has standing to bring an action." *Maloney v. Murphy*, 984 F.3d 50, 60 (D.C. Cir. 2020) (cleaned up).  This is because "[a]n individual whose FOIA request has been denied 'has suffered a particularized injury because he has requested and been denied information Congress gave him a right to receive.'" *Ameen v. U.S. Dep't of State*, No. 21-cv-1399, 2021 WL 4148532, at *3 (D.D.C. Sept. 13, 2021) (quoting *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1117 (D.C. Cir. 2017)).  On the flip side, "if a party has not made a request within the meaning of FOIA, then he does not have standing to bring a suit." *Wetzel v. U.S. Dep't of Veterans Affs.*, 949 F. Supp. 2d 198, 202 (D.D.C. 2013).  However, "the requester's circumstances—why he wants the information, what he plans to do with it, what harm he suffered from the failure to

disclose—are irrelevant to his standing." *Zivitofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006).

Here, the Tax Division argues that "[a]ll three FOIA requests at issue . . . were made by Robert Heggestad" and "[n]o request identifies Heggestad as making the request on behalf of any client." Def.'s Mot. at 9, 11.  It specifically points to the fact that "[t]he requests and subsequent correspondences were made as in the first person" by Heggestad. *Id.* at 11.  Mrs. Stonehill counters that she was named in all three FOIA requests, that the documents attached to those requests made clear that Heggestad submitted them on her behalf, and that the Tax Division was aware at the time that Heggestad was submitting the requests on Stonehill's behalf.  *See* Pl.'s Opp'n at 3–10, ECF No. 56.

 "The rule commonly applied in this District provides that 'an attorney may make a FOIA request on behalf of a client, but the attorney 'must clearly indicate that it is being made on behalf of the client to give that client standing to bring a FOIA challenge.'" *Ameen*, 2021 WL 4148532, at *3 (internal alterations omitted) (quoting *Smallwood v. U.S. Dep't of Just.*, 266 F. Supp. 3d 217, 220 (D.D.C. 2017)).  Two critical factors in determining whether a FOIA request submitted by counsel was made on behalf of a client are whether the request "(1) indicated that counsel was requesting the documents in connection with and for use in the representation of plaintiff, and (2) contained release forms signed by plaintiff authorizing and requesting the release of records to counsel." *Id.* at *5 (internal alterations omitted).

Considering each of these factors in turn, the Court finds that the FOIA requests here clearly indicated that they were made on behalf of Mrs. Stonehill.  With respect to the first factor, the face of each request explains that it "attach[es] a . . . . Power of Attorney and Declaration of Representative . . . signed by Pauline Stonehill, the wife and Co-Administrator of

Harry S. Stonehill's estate[.]"  Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 62; *see id.*, Ex. 10 at 72 (containing nearly identical language); *id.*, Ex. 11 at 83 (containing nearly identical language).[2]  And those attached power of attorney forms each identify "Robert E Heggestad" as Mrs. Stonehill's "attorney[] in fact."  *Id.*, Ex. 9(a) at 65; *id.*, Ex. 10 at 75; *id.*, Ex. 11 at 88.

The Tax Division accurately points out that the power of attorney forms are Internal Revenue Service ("IRS") forms that "allows an individual to represent a taxpayer before the IRS."  Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply") at 5, ECF No. 57.  From there, the Tax Division argues that, because the form was created "for the use and control of another agency" it is 'only . . . controlling on [the IRS]."  *Id.*  It also claims that, because the form "appears to only authorize tax periods from 1958 to 1961," it "does not match the scope of the Heggestad FOIA requests."  *Id.* at 5–6.  Finally, it points out that Section II of the form, which requires the named attorney to make certain certifications, appears to be unsigned, and contends that the lack of signature would cause the IRS to reject the document.  *See id.* at 6.

These would all be persuasive arguments if the relevant question was whether the power of attorney forms entitled Mrs. Stonehill or Mr. Heggestad to some privilege or bound the IRS or the Tax Division to some obligation.  But the relevant inquiry here is whether the FOIA request "indicated that counsel was requesting the documents in connection with and for use in the representation of plaintiff."  *Ameen*, 2021 WL 4148532, at *5.  The references to Mrs. Stonehill and the power of attorney forms on the face of the FOIA requests, together with the fact that

---

[2] Pin citations to these FOIA requests and attached materials refer to the page numbers automatically generated at the top of ECF No. 7-3.

those attached forms identify Mr. Heggestad as Mrs. Stonehill's attorney, are facial indications

that Mr. Heggestad submitted the requests on Mrs. Stonehill's behalf.[3]

Turning to the second factor—whether the FOIA requests "contained release forms

signed by plaintiff 'authorizing and requesting' the release of records to counsel," *Ameen*, 2021

WL 4148532, at *5 (cleaned up), it is undisputed that each of the three FOIA requests attaches

both a Tax Division "Privacy Act Release Form" and a Department of Justice "Certification of

Identity" form.  Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 63–64; *id.*, Ex. 10 at 73–74;

*id.*, Ex. 11 at 86–87.[4]  Both forms authorize the release of information responsive to the FOIA

requests but covered under the Privacy Act, 5 U.S.C. § 552a, to "Robert E. Heggestad."  Pl.'s

Mot. Leave File 1d Am. Compl., Ex. 9(a) at 63–64; *id.*, Ex. 10 at 73–74; *id.* Ex. 11 at 86–87; *see*

Def.'s Mot. at 1 ("The requests included the consent forms signed by Pauline Stonehill as the

executor of the estate of Harry Stonehill.  This consent allows the Tax Division to release records

that would have otherwise been denied under privacy related FOIA exemptions." (citations

omitted)).  In addition, on the certification of identity form, just below the section authorizing

release to Mr. Heggestad, Mrs. Stonehill signed her name as the "individual who is the subject of

the record(s) sought."  Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 64; *id.*, Ex. 10 at 74; *id.*,

Ex. 11 at 87.  While "mere execution of a waiver of privacy interests likely does not itself render

---

[3] Defendants' focus on the requests' use of first-person language is misplaced.  There is no dispute that Mr. Heggestad submitted the requests, and his natural use of first-person language has limited if any bearing on whether he submitted the requests on behalf of Mrs. Stonehill as her lawyer under the circumstances.  *See Ameen*, 2021 WL 4148532, at *5 (rejecting the defendant's argument that "frequent us[e] [of] the first person" shows that a FOIA request submitted by counsel was not made on behalf of the plaintiff).

[4] In addition, two of the requests attach an IRS "Tax Information Authorization" form, which bears Mrs. Stonehill's signature and identifies Mr. Heggestad as the "appointee" to receive her tax information.  Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 67; *id.*, Ex. 11 at 85.

the request one of the third party," it is "relevant and highly probative to the issue of whether the request was made on behalf of the client." *Ameen*, 2021 WL 4148532, at \*5.

The Tax Division argues that the indications on the face of the requests and the attached forms do not meet the "rigid requirement" that a FOIA request explicitly state that it is made on behalf of a client. Def.'s Mot. at 10. Defendant's use of the word "rigid" comes from *Smallwood v. U.S. Dep't of Just.*, in which an attorney made a FOIA request "for documents that [were] of interest to her client, but [did] not indicate that the request [was] being made on the client's behalf." 266 F. Supp. 3d at 218. While an administrative appeal "noted" that the request was made on behalf of the plaintiff, the request itself "did not include any reference to a client generally, or to [the plaintiff] specifically." *Id.* at 219. The Court nonetheless expressed some hesitation to find that the plaintiff lacked standing, explaining that a rule requiring dismissal of "FOIA suits where an attorney filed the initial request without indicating that the request was made on behalf of the plaintiff" seemed "somewhat rigid." *Id.* at 220. But it acknowledged, quoting the similar case of *Wetzel v. U.S. Dep't of Veterans Affs.*, that "a line must be drawn to assure that the 'request' requirement does not devolve into a general interest inquiry." *Id.* (quoting *Wetzel,* 949 F. Supp. 2d at 204).[5] The court ultimately was persuaded that the plaintiff

---

[5] The quoted case, *Wetzel*, offers a somewhat closer analogy to this case, but critical distinctions remain. In that case, an attorney submitted two FOIA requests seeking information related to litigation involving the plaintiff, his client. *Wetzel*, 949 F. Supp. 2d at 199. But one of the requests did "not assert" that the attorney was counsel to the plaintiff and the other, though it stated that the "requester law firm represents the veteran in connection with a dispute," did "not make clear that the attorney-client relationship extends to the FOIA request itself." *Id.* at 202-03. By contrast, here, each request identifies Mrs. Stonehill and refers to an attached power of attorney document naming Mr. Heggestad as her attorney. Moreover, as explained below, other courts have "eschew[ed] a hyper-technical requirement of an 'express statement'" that "the request is made on behalf of a client" in the presence of other clear indicia showing that to be the case. *Ameen*, 2021 WL 4148532, at \*5. And the *Wetzel* court itself acknowledged that the distinction between a "request clearly made on a plaintiff's behalf and one not sufficiently clear" can be "thin." *Wetzel*, 949 F. Supp. 2d at 204.

lacked standing because "[t]he 'Request Description' portion of the request . . .. [did] not indicate that the request was made on behalf of any client, let alone [the plaintiff]," and the plaintiff's name did "not appear anywhere in the request." *Id.* at 221.  The court also explained that "the agency's response to the FOIA request indicate[d] that it was not aware that the attorney was making a request for a client." *Id.*

Unlike *Smallwood*, here the requests name Mrs. Stonehill on their face and incorporate by reference and attachment power of attorney forms that identify Mr. Heggestad as her attorney. Moreover, a court in this District rejected a similar attempt by an agency to interpret *Smallwood* or *Wetzel* as creating a "bright line rule" that a FOIA request through counsel must explicitly state that it is made on behalf of a client.  *Ameen*, 2021 WL 4148532, at *5 ("eschew[ing]" the "hyper-technical requirement" that "a request must expressly state that the request is made on behalf of a client for the client to have standing," explaining that "[s]uch a statement would certainly be *sufficient* for plaintiff to have standing . . . but is not *necessary* for plaintiff to have standing himself").  And that holding aligns with the more flexible approach employed by other courts in this District.  *See, e.g.*, *Brown v. EPA*, 384 F. Supp. 2d 271, 276 (D.D.C. 2005) (explaining that "several courts have dismissed FOIA claims for lack of standing where plaintiff's counsel submitted a request for documents to an agency without including the plaintiff's name on the request *or* stating that the request was being filed on behalf of the plaintiff" and listing illustrative cases (emphasis added)); *cf. Three Forks Ranch Corp. v. Bureau of Land Mgmt.*, 358 F. Supp. 2d 1, 2 (D.D.C. 2005) (explaining that the D.C. Circuit "has never specifically articulated the requirements for filing a FOIA request on behalf of another"). Indeed, both the *Smallwood* and *Wetzel* courts acknowledged that record evidence beyond the face of a FOIA request may be used to corroborate facial indicia that it was submitted on behalf

of a client in the absence of explicit language to that effect.  *See Wetzel*, 949 F. Supp. 2d at 204

(explaining that "[c]orrespondence outside of the FOIA requests . . . can . . . be used to

corroborate a finding that counsel is making a FOIA request on behalf of his client");

*Smallwood*, 266 F. Supp. 3d at 221 (finding, with citations to the record, that "the agency's

response to the FOIA request indicates that it was not aware that the attorney was making the

request for a client").  Such use of extrinsic evidence is not uncommon.  *See, e.g.*, *Brown*, 384 F.

Supp. 2d at 276 ("[O]ther correspondence in the record confirms that it was the understanding of

all of the parties that [counsel] was making a request for his client rather than on his own

behalf.").

Here, record evidence that the Tax Division understood that Mr. Heggestad represented

Mrs. Stonehill overwhelmingly corroborates the facial indicia that he made the requests on her

behalf.  The Tax Division's summary judgment motion makes clear that it was aware that Mr.

Heggestad represented the Stonehills in this string of related FOIA actions going back decades.

*See* Def.'s SUMF ¶ 8 ("In August 2000, Robert Heggestad, on behalf of his client, Harry

Stonehill filed a FOIA complaint . . . ").  More specifically, Division Counsel for the Tax

Division, Carmen Banerjee, in a declaration submitted in support of the Tax Division's motion

for summary judgment, explained her understanding that, "[d]uring the last several decades, Mr.

Robert E. Heggestad has submitted to the Tax Division many FOIA requests . . . on behalf of

Stonehill."  1d Banerjee Decl. ¶ 8, ECF No. 16-4.[6]  Indeed, one of the FIOA requests at issue

here refers, albeit indirectly, to this long history.  Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a)

---

[6] Importantly, Banerjee is one of only two employees "responsible for processing [FOIA]
requests the Tax Division receives."  2d Banerjee Decl. ¶ 33, ECF No. 53-1; *see also* Def.'s
Opp'n to Mot. Produc. Sched. at 3, ECF No. 53 ("The Tax Division's FOIA processing unit is
small and only consists of two people: a Government Information Specialist (GIS) and Division
Counsel for FOIA and PA Matters, Carmen Banerjee.").

at 62 ("*As you know*, the documents requested relate to the Government's actions against

Stonehill . . . ." (emphasis added)).

Against this backdrop, the record concerning the specific FOIA requests at issue here

establishes that, at all relevant times during this longstanding dispute until the Tax Division filed

its cross-motion to dismiss in October 2022, the Tax Division understood that Mr. Heggestad

submitted the requests on behalf of Mrs. Stonehill.  *See* Def.'s Am. Answer ¶¶ 118, 126, 137,

ECF No. 15-1 (admitting allegations in first amended complaint that Mr. Heggestad filed the

FOIA requests "on behalf of Mrs. Stonehill"); Joint Status Report, Sept. 4, 2020, ECF No. 13

(explaining, in first joint status report submitted in this matter, filed by the Tax Division, that

"[a]t issue in this case are three [FOIA] requests [Mr. Heggestad] submitted to DOJ-Tax on

behalf of Pauline Stonehill" and distinguishing prior FOIA requests submitted by "Journalist Ms.

Mclean, with authorization from Pauline Stonehill (but not acting on behalf of Pauline

Stonehill)"); Def.'s SUMF ¶ 13 ("Plaintiff Pauline Dale Stonehill, in her capacity as the co-

executor and co-administer of the Estate of Harry S. Stonehill, filed three Freedom of

Information ('FOIA') requests with the Tax Division . . . .").  This is substantial evidence

corroborating the facial indicia that Mr. Heggestad submitted the requests on behalf of Mrs.

Stonehill.

In summary, each of the three FOIA requests at issue here names Mrs. Stonehill and

refers to attached power of attorney and release forms she filled out.  *See* Pl.'s Mot. Leave File

1d Am. Compl., Ex. 9(a) at 62; *id.*, Ex. 10 at 72; *id.*, Ex. 11 at 83.  The attached power of

attorney forms are signed by Mrs. Stonehill and name Mr. Heggestad as her "attorney[] in fact."

Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 65–66; *id.*, Ex. 10 at 75–76; *id.*, Ex. 11 at 88–

89.  The attached release forms also are signed by Mrs. Stonehill and authorize Mr. Heggestad to

receive responsive records.  *See* Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 63–64; *id.*, Ex.

10 at 73–74; *id.*, Ex. 11 at 86–87.  One of those forms, the "Certification of Identity" form,

includes Mrs. Stonehill's signature as "the individual who is the subject of the records sought."

Pl.'s Mot. Leave File 1d Am. Compl., Ex. 9(a) at 64; *id.*, Ex. 10 at 74; *id.*, Ex. 11 at 87.  And the

long record of this FOIA action, especially when viewed in the context of the parties' much

longer shared history of related FOIA litigation, demonstrates that the Tax Division well

understood that Mr. Heggestad submitted the requests on behalf of Mrs. Stonehill.  On these

facts, the Court is satisfied that the requests "clearly indicate" that they were being made on

behalf of Mrs. Stonehill.  *See Smallwood*, 266 F. Supp. 3d at 220 (citation omitted).  Therefore,

Mrs. Stonehill is the "proper and appropriate party to invoke federal judicial power" in this FOIA

suit.  *Flast*, 392 U.S at 102.[7]

## B.  Plaintiff's Motion for Production Schedule

The parties talk past each other with respect to Mrs. Stonehill's motion for an order

requiring production of non-exempt documents within 120 days.  As noted above, a few weeks

before filing this motion, Mrs. Stonehill explained in a joint status report that she intended to

"file a motion seeking the Court to order the Tax Division to expedite its processing of the

---

[7] Mrs. Stonehill has also moved for leave to file a second amended complaint.  *See* Pl.'s
Mot. Leave File 2d Am. Compl.  However, the proposed amendments appear solely directed at
curing the alleged standing infirmity raised in the Tax Division's cross-motion to dismiss.  *See*
Pl.'s Mot. Leave File 2d Am. Compl. at 10, ECF No. 61-1 (explaining that the two proposed
amendments reflect new requests that "specifically identify Mrs. Stonehill as the undersigned
counsel's client"); Pl.'s Reply Supp. Mot. Leave File 2d Am. Compl. at 7 n.9, ECF No. 68
(explaining that a third amendment that Mrs. Stonehill apparently originally contemplated, which
would have taken the second amended complaint beyond the scope of what was included in the
original complaint, "was not included in the Second Amended Complaint").  Accordingly, the
Court herein orders the parties to submit a joint status report stating the position of the parties as
to whether this Opinion renders moot Mrs. Stonehill's motion for leave to file a second amended
complaint, and will hold the motion in abeyance pending review of that submission.

requests." Joint Status Report, Aug. 26, 2022 ¶ 10.  The Tax Division noted its objection to that

forthcoming motion on grounds that it was "already processing the FOIA requests at a

reasonable rate," that "cause for expedited processing of this FOIA request cannot be met under

5 U.S.C. § 552(a)(6)(E),"[8] and that "expedited processing will substantially burden the agency."

*Id.* ¶ 11.  Mrs. Stonehill's motion now attempts to clarify that she is "not requesting *expedited*

processing of her FOIA requests," but is simply seeking an order requiring the Tax Division to

complete processing within 120 days.  Mem. Supp. Pl.'s Mot. Produc. Sched. at 7–8, ECF No.

51-1 (emphasis in original).  The Tax Division's opposition continues to treat Mrs. Stonehill's

motion as one for expedited processing under § 552(a)(6)(E) and opposes it on similar grounds

to those previewed in the joint status report.  *See* Def.'s Mot. at 4–8.  Mrs. Stonehill's reply

reiterates her position that "Mrs. Stonehill is not asking this Court to review the Tax Division's

failure to expedite the processing . . . at the administrative level" or for a "preliminary injunction

asking the Court to direct expedited processing of her requests in this proceeding."  Pl.'s Reply

Supp. Mot. Produc. Sched. at 1, ECF No. 55.

     Plaintiff's motion and reply are notably devoid of any reference to the authority on which

the Court should grant her request or cases in which courts in analogous situations have entered

orders similar to what she requests here.  Accordingly, consistent with Mrs. Stonehill's

abandonment of any present claim that she is entitled to expedited processing under

---

[8] This section provides "for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency."  § 552(a)(6)(E)(i).  In this context, "compelling need" means,

> (I) that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning . . . Federal Government activity.

§ 552(a)(6)(E)(v).

§ 552(a)(6)(E), the Court construes Mrs. Stonehill's motion as a request to exercise its general authority to "regulate practice in any manner consistent with federal law."  Fed. R. Civ. P. 83(b); *see Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989) ("[C]ourts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (citation omitted)).

The Tax Division states that, from the date of the Court's prior opinion on February 10, 2022 through October 6, 2022—about two weeks after Mrs. Stonehill filed her motion—"Tax Division professionals have spent 725 hours on this FOIA litigation alone."  Def.'s Mot. at 3.  In her attached declaration, Ms. Banerjee explains that she and one Government Information Specialist ("GIS") are "solely responsible for processing [FOIA] requests the Tax Division receives."  2d Banerjee Decl. ¶ 33.  She states that, of the 725 total hours spent by Tax Division professionals on this FOIA litigation, she personally has spent 124.5 hours on it, while the GIS has spent 464.75 hours on it, or "four hours per day each workday since June 2, 2022."  *Id.* ¶¶ 20, 23–24.  The Tax Division explains that it "began its upload of over 500,000 pages of potentially responsive records on May 15, 2022, and, as of August 26, 2022 it reviewed 733 records (including duplicates) consisting of 50,000 pages of records," thus completing its review of part two of Request No. 11238.  Def.'s Opp'n to Mot. Produc. Sched. at 4.  This averages out to "over 16,000 pages a month."  *Id.* at 7.  Once the Tax Division completes its review of part one of that request, it will "begin its review of records potentially responsive to [Request No.] 11240."  2d Banerjee Decl. ¶ 30.

The Tax Division cites a string of cases in this District for the proposition that courts "generally have held the processing of 500 pages of [*sic*] month is reasonable under FOIA." Def.'s Mot. at 6.  For example, the Tax Division cites to *Freedom Watch v. Bureau of Land*

*Mgmt.* 325 F. Supp. 3d 139 (D.D.C. 2018), in which the court found processing 500 pages per month justified under the circumstances with respect to a document queue "in excess of approximately 100,000 pages." *Id.* at 142; *see* Def.'s Mot. at 6.  It also cites to *Middle E.F. v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183 (D.D.C. 2018), in which the court denied the plaintiff's request to order an increase in the processing rate from 500 to 1,000 pages per month, based in part on the "burden on [the] agency" of reviewing a universe of over 27,000 potentially responsive documents at that rate.  *Id.* at 184–186.  Other courts have reached similar holdings. *See, e.g.*, *Energy Future Coal. v Off. of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161-62 (D.D.C. 2016) (rejecting request to order processing rate increased to 1,000 upon finding that the agency was exercising due diligence in processing the plaintiff's request alongside 27 other complex FOIA requests).

Mrs. Stonehill makes no attempt to distinguish these cases.  Nor does Mrs. Stonehill successfully puncture the "presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), accorded to Ms. Banerjee's averment that, "[g]iven the volume of records, the age of the records sought, the complexity of the requests, and the limited resources of the Tax Division, that [120-day] timeline is impossible to meet and would cause harm to the agency," including forcing it to "reallocate time and other resources from other pending FOIA requests," of which the Tax Division received 104 during fiscal year 2021 alone.  2d Banerjee Decl. ¶¶ 34, 36, 38.[9]  However, as stated in its prior opinion, the Court is "mindful . . . of the

---

[9] Mrs. Stonehill claims that the Tax Division is intentionally delaying.  *See* Pl.'s Mot. Produc. Sched. at 3–7.  However, the allegations she raises in support focus almost entirely on the alleged three-year delay in processing FOIA requests submitted by a different person—a member of the news media named Bethany McLean—in 2014 and 2015.  *See id.* at 3–6.  Those requests, discussed at greater length in the Court's prior opinion, "roughly correspond to the three requests at issue in this action." *Stonehill*, 2022 WL 407145, at *3.  But as the Court explained, "McLean's request is, of course, not before this Court[.]"  *Id.* at *12 n.14.  Confining

considerable time that has already elapsed since this request was submitted in September 2018" –

time that has enlarged by nearly a year and a half since the Court made that observation.

*Stonehill*, 2022 WL 407145, at *11.  Moreover, because it seems that a very large percentage of

the pages reviewed are either duplicates or non-responsive, *see* Joint Status Report, Aug. 26,

2022 ¶ 7 (explaining that after reviewing "hundreds of records potentially responsive to

Plaintiff's FOIA requests," the Tax Division "did not have any non-exempt records to release"

excluding duplicates and noting that just 15 documents were withheld in full and another 38

were transferred to other agencies for consultation or processing), which inherently take less time

to process than responsive records, the Tax Division must continue to process records at a rate

far greater than 500 pages per month.  Accordingly, while the Court denies Plaintiff's present

motion for an order requiring the Tax Division to do the seemingly impossible and produce all

responsive and non-exempt documents within 120 days, Plaintiff may renew a request for a

reasonable production schedule, by motion citing to relevant authority, should the Tax Division's

rate of processing decrease or other arising circumstances warrant.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Production Schedule (ECF No. 51) is

**DENIED** and Defendant's Cross-Motion to Dismiss (ECF No. 54) is **DENIED**.  The parties

shall submit a joint status report within 30 days of the issuance of this Opinion stating the

position of the parties as to whether this Opinion moots Plaintiff's Motion for Leave to File a

Second Amended Complaint.  Pending review of that joint status report, Plaintiff's Motion for

---

its analysis to "the present FOIA request," the Court finds that Mrs. Stonehill has not offered
sufficient evidence to rebut the presumption of good faith afforded to agency declarations. *Id.*;
*cf. id.* at *13 (rejecting allegations of bad faith as to the adequacy of the Tax Division's search
concerning Request No. 11239 and explaining that "earlier intransigence ought not count against
[the agency] if their later behavior was characterized by cooperation" (citation omitted)).

Leave to File a Second Amended Complaint (ECF No. 60) is **HELD IN ABEYANCE**.  An

order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 26, 2023                                   RUDOLPH CONTRERAS
                                                        United States District Judge